**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
|---|---|---|
| v. | : | NO. 21-380 |
| TONY REN | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                    **February 28, 2023**

Our grand jury indicted Tony Ren on two counts of bribing federal officials arising from his health and safety practices while operating a construction company. Mr. Ren proceeded to trial. Our jury found him guilty. He asked for several delays in his sentencing hearing without being incarcerated. The United States did not oppose the continuances. We sentenced Mr. Ren on November 1, 2022 to three months incarceration representing a significant variance from the guidelines range. He then asked for another month delay in reporting to custody. The United States did not oppose. We granted his request and began his sentence on February 2, 2023. He now moves, three weeks into his sentence, for release seeking to attend his father-in-law's March 14, 2023 funeral in China. The United States opposes this request. We deny his request.

**I.     Background**

The jury heard substantial evidence of Mr. Ren's guilt for bribing federal officials to conceal unsafe construction measures at a large project in Philadelphia.

In October 2017, Compliance Safety and Health Officers charged with ensuring compliance with work safety and health standards under the Occupational Safety and Health Act inspected Mr. Ren's construction site after receiving a call reporting imminent danger to workers at the site. Officers found violations at the construction site based on their inspections in October

and November 2017. Mr. Ren offered Compliance Safety and Health Officers bribes on two occasions; first to falsify the results of their October and November 2017 inspections and to not disclose violations to OSHA resulting in over $222,000 in penalties and second to eliminate nearly $99,000 in old citations and unpaid penalties from earlier OSHA inspections in 2016.

A jury convicted Mr. Ren on both charges in December 2021. Mr. Ren requested, and received, multiple continuances of his sentencing unopposed by the United States. We sentenced Mr. Ren on November 1, 2022 to three months incarceration, one year of supervised release, a $50,000 fine, and a $200 special assessment. We ordered him to begin serving his sentence after the year-end holidays. He then asked for another month extension. The United States did not oppose. We granted his request. Mr. Ren began serving his sentence on February 2, 2023.

**II.     Analysis**

Mr. Ren now (three weeks into his sentence) moves to modify his sentence so he may attend the funeral of his father-in-law in China. He suggests we either: (1) modify his sentence to time served as of March 9, 2023 resulting in him serving five weeks for his crimes; or (2) commute his sentence for a period of time necessary to attend his father-in-law's funeral in China and reimpose the remainder of his term upon his return from China. There is no basis for either request.

We may not modify a term of imprisonment once it is imposed with limited exceptions provided in by Congress in section 3582(c)(1)(A):

(1) in any case--

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

> (i) extraordinary and compelling reasons warrant such a reduction;
>
> …
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission …[1]

The United States Sentencing Commission's policy statement allows us to reduce a term of imprisonment under section 3582(c)(1)(A) where: (i) extraordinary and compelling reasons warrant the reduction; (ii) the defendant is not a danger to the safety of others or the community under 18 U.S.C. § 3142(g); and (iii) consideration of the sentencing factors in 18 U.S.C. § 3553(a) support the relief sought.[2]

### A. Mr. Ren failed to exhaust his administrative rights.

Mr. Ren asks us to grant relief before the Bureau of Prisons reviews his request. Congress in section 3582(c)(1)(A) requires an incarcerated person hoping to modify his term of imprisonment to first present a request to the warden of his facility and cannot seek relief from us until after thirty days. The Bureau of Prisons detains Mr. Ren at Fort Dix FCI consistent with our recommendation to be held close to his family in Philadelphia. On February 17, 2023, Mr. Ren requested from the Warden a modification of his sentence or, alternatively, a furlough, to permit his attendance at the funeral in China.[3] Thirty days has not elapsed as required by Congress. Mr. Ren asks we excuse the administrative exhaustion requirement because of the exigent circumstances: Mr. Ren must be able to fly to China on March 10 for the funeral scheduled for March 14, 2023, making it impossible to wait the thirty-day period from his request to the Warden.

Mr. Ren concedes the decision of our Court of Appeals in *United States v. Raia*, requires a mandatory exhaustion of administrative remedies.[4] But, he argues, this is at most dicta, and we may excuse his failure to exhaust his administrative remedies.[5] The United States argues Congress

3

requires exhaustion of administrative remedies.[6] As recently as last year, our Court of Appeals, citing *Raia*, concluded the exhaustion requirement is considered a "mandatory claims-processing rule."[7] Mr. Ren provides no authority to allow excusal of his failure to exhaust his administrative remedies, a mandatory and "stringent" requirement "present[ing] a glaring roadblock foreclosing compassionate release."[8] We deny Mr. Ren's motion for failure to exhaust.

### B. Mr. Ren fails to meet his burden for sentence reduction.

Mr. Ren does not demonstrate extraordinary and compelling reasons justify our reducing his three-month sentence even if he had exhausted his administrative remedies.

Mr. Ren claims his family circumstances constitute extraordinary and compelling reasons under section 3582(c)(1)(A). Congress in section 3582 did not define the phrase "extraordinary and compelling reasons." It delegated the contours of "extraordinary and compelling reasons" to the Sentencing Commission. The Sentencing Commission defines "extraordinary and compelling reasons" as existing in limited circumstances: (a) the medical condition of the defendant; (b) the age of the defendant; (c) "family circumstances"; and (d) "other reasons."[9] Mr. Ren concedes the "family circumstances" provision "are not directly applicable here."[10] But, he argues, we should consider his "cultural and social obligation" to attend his father-in-law's funeral as an extraordinary and compelling reason to warrant a sentence reduction.[11] Mr. Ren argues the justice system "should have mercy" to allow him "to do what he must" in acting as the head of his family at his father-in-law's funeral.[12]

The Sentencing Commission in section 1B1.13 suggests we may modify a sentence due to family circumstances in two circumstances: (1) "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children"; and (2) "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the

spouse or registered partner."[13] Although the Sentencing Commission's policy statement is no longer binding, it "still sheds light on the meaning of extraordinary and compelling reasons."[14] Guided by the policy statement, Mr. Ren's attendance at his father-in-law's funeral does not constitute extraordinary and compelling reasons.

Even if attending his father-in-law's funeral as the head of his family constitutes extraordinary and compelling reasons to warrant a reduction in sentence, Mr. Ren must still demonstrate he is not a danger to the community under section 3142(g) and a consideration of the sentencing factors in section 3553(a) support a reduction in sentence. Mr. Ren failed to address either of these factors.

The factors under section 3553(a) counsel against release. Congress allows us to reduce a sentence after considering the section 3553(a) factors "to the extent they are applicable."[15] Congress in section 3553(a) requires we consider, among other factors, the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; the kinds of sentences available; the kinds of sentence and sentencing range for the offense as established by the Sentencing Commission; and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.[16]

Mr. Ren asks us to reduce his sentence to time served or commute his sentence by allowing him to travel to China three weeks into a three-month sentence. He assures us he will then, upon return, serve the remainder of his sentence. Neither of these scenarios comport with the policies outlined by Congress in section 3553(a). A jury convicted Mr. Ren of attempting to bribe

inspectors charged with ensuring safe work conditions at construction sites he ran in both 2016 and 2017. He attempted to bribe these inspectors to ignore significant penalties he incurred in failing to maintain and abide by safety regulations designed to keep workers and the public safe. The seriousness of Mr. Ren's offense and his history of failure to comply with federal workplace safety rules and attempts to bribe his way around his offenses, respect for the law, just punishment for his offense, and adequate deterrence to criminal conduct and to protect the public from further crimes all counsel against a reduction in sentence. Mr. Ren's three-month sentence is already a substantial downward variance from the sentence he could have received. Reducing his sentence is contrary to sentencing considerations. We deny his motion for reduction of sentence.

### C.  We deny Mr. Ren's request for furlough.

The United States argues Mr. Ren's request for a commutation of his sentence for a period of time necessary to attend his father-in-law's funeral in China and reimpose the remainder of his term upon his return from China (the second option he offers us) is essentially a request for a furlough under 18 U.S.C. § 3622.[17]

Congress in section 3622 provides: "The Bureau of Prisons may release a prisoner from the place of his imprisonment for a limited period if such release appears to be consistent with the purpose for which the sentence was imposed and any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2), if such release otherwise appears to be consistent with the public interest and if there is reasonable cause to believe that a prisoner will honor the trust to be imposed in him, by authorizing him, under prescribed conditions, to – (a) visit a designated place for a period not to exceed thirty days, and then return to the same or another facility, for the purpose of – … (2) attending a funeral of a relative."[18]

6

The United States argues Congress in section 3622 vests the sole authority to grant a temporary release to attend a funeral of a relative in the discretion of the Bureau of Prisons, not the Court. We agree. [19] We deny his request as outside our authority to the extent Mr. Ren seeks relief in the form of a furlough more properly considered under 18 U.S.C. § 3622.

**III.   Conclusion**

Mr. Ren offers no basis to allow him to leave his custody less than three weeks into service of a three-month sentence to travel to China for his father-in-law's funeral. He did not exhaust his administrative remedies. And we would not allow him to leave custody in any event at this stage unless the Bureau of Prisons allowed his furlough without our involvement.

---

[1] 18 U.S.C. § 3582(c)(1)(A)(i).

[2] U.S.S.G. § 1B1.13.

[3] ECF Doc. No. 61 ¶¶ 15–17.

[4] 954 F.3d 594 (3d Cir. 2020).

[5] See ECF Doc. No. 61 ¶ 22, n. 2.

[6] ECF Doc. No. 63.

[7] *United States v. Banks*, No. 21-2674, 2022 WL 832049, at *2 (3d Cir. Mar. 21, 2022) (quoting *United States v. Sanford*, 986 F.3d 779, 782 (7th Cir. 2021)).

[8] *United States v. Johnson,* No. 21-2649, 2022 WL 1402048 (3d Cir. May 4, 2022), at *1 (quoting *Raia*, 954 F.3d at 597).

[9] U.S.S.G. §1B1.13, Application Note 1.

[10] ECF Doc. No. 61 ¶ 33.

[11] Id. ¶¶ 34, 35.

[12] ECF Doc. No. 61 ¶ 35.

[13] U.S.S.G. §1B1.13, Application Notes 1(C).

[14] *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021).

[15] 18 U.S.C. § 3582(c)(1)(A).

[16] 18 U.S.C. § 3553(a).

[17] ECF Doc. No. 63 at 12.

[18] 18 U.S.C. § 3622(a)(2).

[19] *See United States v. Rodriguez*, 468 F. Supp. 3d 681, 686, n. 4 (E.D. Pa. 2020) (denying defendant's alternative request for furlough under 18 U.S.C. § 3622 until COVID-19 pandemic ended as section 3582(c)(1)(a) does not include the authority to grant temporary release on furlough) (collecting cases).